U.S. District Court
District of Connecticut
FILED AT NEW HAVEN

October 18, 2024

By S. Santos
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT | : | ss: New Haven, Connecticut |
| | : | 3:24-mj-938 (MEG) |
| | : | |
| COUNTY OF NEW HAVEN | : | October 18, 2024 |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS**

I, Joel Perez, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AFFIANT BACKGROUND**

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been since January 2024. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for federal felony offenses. I am currently employed by the Ansonia Police Department, and have been since March 2022. I have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) since January 2024. During my time as a police officer and Task Force Officer, I have participated in numerous criminal investigations, including investigations into suspected narcotics trafficking. I am currently assigned to the New Haven District Office, Organized Crime Drug Enforcement Task Force, ("Task Force") which is composed of personnel from the DEA, United State Marshal Service ("USMS"), New Haven Police Department ("NHPD"), West Haven Police Department ("WHPD"), Branford Police Department, ("BPD"), Meriden Police Department ("MPD"), Ansonia Police Department (APD), Connecticut State Police ("CSP"), Shelton Police Department (SPD), East Haven Police Department (EHPD), Naugatuck Police Department ("NPD"), and Waterbury Police Department ("WPD"). In connection with these investigations, I have executed numerous search and arrest

warrants, including arrest warrants for narcotics trafficking offenses and search warrants for social media accounts, cellular devices, and physical premises such as residences.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

3. This affidavit is also submitted in support of applications for search warrants for the following devices:

   a. **TARGET CELL PHONE 1**. A blue Motorola Cellphone assigned to phone number 203-509-8136, ("Target Cell Phone 1," or "Device 1"), which is located in the District of Connecticut and was seized during the arrest of Martin ONOFRE-MENDEZ on October 1, 2024. Target Cell Phone 1 is described herein and in Attachment A-1.

   b. **TARGET CELL PHONE 2**. A black Samsung Smart Phone with purple case ("Target Cell phone 2," or "Device 2"), which is located in the District of Connecticut and was seized during the arrest of Martin ONOFRE-MENDEZ on October 1, 2024. Target Cell Phone 2 is described herein and in Attachment A-2.

4. Collectively, **Target Cell Phones 1 and 2** will be referred to herein as "The Target Cell Phones." The proposed warrant for **The Target Cell Phones** would authorize the forensic examination of those devices for the purpose of identifying electronically stored information particularly described herein and in their respective Attachment B.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that ONOFRE-MENDEZ, whose date of birth is known to your affiant, has violated 21 U.S.C. § 841 (Possession with the Intent to Distribute and Distribution of Narcotics), 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances), 21 U.S.C. § 843 (Use of a Telephone to Facilitate a Narcotics Trafficking Offense), and 18 U.S.C. § 922(a)(1) (Dealing in Firearms

without a License) (the "Target Offenses") and that the target device set forth above will contain evidence of those violations.

## PROBABLE CAUSE

6. As discussed herein, an investigation by the DEA has shown that ONOFRE-MENDEZ is distributing large quantities of Cocaine in the New Haven area.

### Introduction of a Cooperating, Confidential Source

7. Unless otherwise stated, any information obtained from a Cooperating Source in this case has been related to me by the source, by members of the Task Force, and/or by other Law Enforcement Officers who have debriefed the source. Moreover, unless otherwise stated, all source information set forth herein is based upon personal observations by the source and/or statements directed to or overheard by the source, from the Subjects named herein, their criminal associates, or persons with personal knowledge of the incidents described herein.

8. A description of, and background information about, the Cooperating Source debriefed in connection with this investigation is set forth below. The source is referred to using male pronouns irrespective of the actual sex of the source.

9. **Cooperating Source Number One** ("CS-1") is a confidential informant, who has been monetarily compensated in exchange for information and services he has provided to Law Enforcement. CS-1 began cooperating with the New Haven Police Department in January of 2024. CS-1 has been accurate and corroborated by investigators in the current investigation into ONOFRE-MENDEZ and his associates. To my knowledge, CS-1 has not knowingly provided any false information.

### Background of the Investigation

a. **Controlled Purchase of Narcotics**

10. On April 24, 2024, members of the DEA New Haven District Office formulated a plan to purchase narcotics from ONOFRE-MENDEZ by utilizing CS-1. On said date, investigators met with CS-1 at a pre-arranged location to prepare for the purchase of Narcotics from ONOFRE-MENDEZ.

11. Investigators searched CS-1 and their vehicle for contraband and money prior to the controlled purchase. CS-1 had no other contraband, money, or narcotics. At this time, investigators informed CS-1 to drive to the area of 369 Grand Ave, New Haven, CT and place a phone call to Target Device 1 and request to purchase Narcotics. Investigators then provided CS-1 with $200 of New Haven Police Department Official Advance Funds (NHPD-OAF).

12. Surveillance units followed CS-1 to the area of Grand Ave New Haven, Connecticut. CS-1 arrived and parked in the area of 369 Grand Ave, New Haven, CT. CS-1 called 203-509-8136, **Target Cell Phone 1,** and ONOFRE-MENDEZ answered. CS-1 then notified ONOFRE-MENDEZ that he is outside the "El Pescador" market, hereon described as "**Premises 1**." Shortly after, ONOFRE-MENDEZ was observed exiting the "El Pescador" market and walk towards CS-1's vehicle. ONOFRE-MENDEZ entered and sat in CS-1's passenger side. CS-1 requested to purchase $200 worth of Cocaine from ONOFRE-MENDEZ. ONOFRE-MENDEZ then stated to give him a second. ONOFRE-MENDEZ then exited the vehicle and walked back towards the **Premises 1** and enter the premise. Shortly after, ONOFRE-MENDEZ exited **Premises 1** and walked back towards CS-1's vehicle and enter. ONOFRE-MENDEZ then provided the CS with a clear plastic bag containing white powdery substance in exchange of the $200 NHPD-OAF. ONOFRE-MENDEZ then exited the vehicle and walked back to **Premises 1**.

13. CS-1 proceeded directly to the pre-arranged meet location, where CS-1 again met with Task Force members. Surveillance units followed CS-1 from the transaction location to the meet location. CS-1 did not meet with anyone nor make any stops along the way to the designated meet location.

14. At the pre-arranged meet location, CS-1 relinquished one clear plastic bag containing a white powdery substance of suspected Cocaine, they had purchased from ONOFRE-MENDEZ to the members of the Task Force. CS-1 and their vehicle were searched for contraband and money with negative results.

15. A sample of the suspected Cocaine CS-1 had purchased from ONOFRE-MENDEZ on June April 4, 2024 had a gross weight (with packaging) of approximately 4.16 grams and was field-tested with positive presumptive results for the presence of Cocaine.

b. **Controlled Narcotics Purchase utilizing Undercover Officer (UC)**

16. On June 13, 2024, UC met with investigators at a pre-arranged location to prepare for the purchase of Cocaine from ONOFRE-MENDEZ. In the presence of investigators, the UC called ONOFRE-MENDEZ utilizing telephone number 203-509-8136 assigned to **Target Cell Phone 1** to arrange the purchase of Cocaine. ONOFRE-MENDEZ instructed the UC to meet him at the Shop. Investigators know the "Shop" to be **Premises 1**. The phone call conversation was audio/video recorded.

17. Investigators searched the UC and their vehicle for contraband and money, which yielded negative results. Investigators provided the UC $950 in DEA funds and an audio transmitting/recording device.

18. Surveillance units followed UC to the area of **Premises 1**. Surveillance units observed a male matching the physical description of ONOFRE-MENDEZ walk towards

**Premises 1** with numerous cases of beer. ONOFRE-MENDEZ then looked at the UC and gave him/her signal indicating that he will be right back.

19. Shortly after, ONOFRE-MENDEZ was observed by surveillance units exiting **Premises 1** and walk towards UC's vehicle. ONOFRE-MENDEZ entered and sat in the UC's passenger side. The UC requested to purchase $950 worth of Cocaine from ONOFRE-MENDEZ. ONOFRE-MENDEZ then stated to give him some time because the product has to be dropped off to him. At this time, ONOFRE-MENDEZ then exited the vehicle and walked back towards the **Premises 1** and enter the premise. The UC then exited the area and proceeded directly to the pre-arranged meet location, where the UC again met with Task Force members. Surveillance units followed the UC from the transaction location to the meet location. The UC did not meet with anyone nor make any stops along the way to the designated meet location.

20. Approximately 20 minutes later, ONOFRE-MENDEZ called the UC utilizing **Target Device 1**, notifying the UC to come back. Surveillance units followed UC to the area of **Premises 1**. ONOFRE-MENDEZ then walked towards the UC's vehicle and enter. ONOFRE-MENDEZ then provided the CS with (2) two clear plastic baggies containing white powdery substance in exchange of the $950 DEA-OAF. ONOFRE-MENDEZ then exited the vehicle and walked back to **Premises 1**.

21. The UC proceeded directly to the pre-arranged meet location, where the UC again met with Task Force members. Surveillance units followed the UC from the transaction location to the meet location. The UC did not meet with anyone nor make any stops along the way to the designated meet location.

22. At the pre-arranged meet location, US returned the audio/video transmitting/recording devices and transferred custody of the suspected Cocaine they purchased

from ONOFRE-MENDEZ to the members of the Task Force. The UC and their vehicle were searched for contraband and money with negative results.

23. A sample of the suspected Cocaine the UC had purchased from ONOFRE-MENDEZ on June 13, 2024 had a gross weight (with packaging) of approximately 58.50 and 58.08 grams and was field-tested with positive presumptive results for the presence of Cocaine. Members of the Task Force reviewed the audio/video recording of the meet between the UC and ONOFRE-MENDEZ, and it was determined to be consistent with surveillance observations and UC's report of the narcotics transaction.

### c. Federal Arrest Execution of ONOFRE-MENDEZ

24. On October 1, 2024, at approximately 10:42AM, members of the DEA-NHDO in conjunction with the Drug Enforcement Administration Special Reaction Team (DEA-SRT), formulated a plan to arrest ONOFRE-MENDEZ who had an Active Federal warrant signed by Honorable Judge Robert Spector. On said date, the UC sent a text to **Target Device 1** believed to be held by ONOFRE-MENDEZ, to purchase a total of 250 grams of Cocaine. Shortly after, the UC video called **Target Device 1.** At this time, ONOFRE-MENDEZ answered and appeared to be driving. The UC then requested ONOFRE-MENDEZ if he/she can see the product prior to meeting ONOFRE-MENDEZ then stated that they cannot have conversations over the phone.

25. Shortly after ONOFRE-MENDEZ called the UC utilizing **Target Device 1**. ONOFRE-MENDEZ then asked the UC to meet at his wife's house. ONOFRE-MENDEZ then sent a text message utilizing **Target Device 1,** CS-1 which stated as follows "600 Ferry Street New Haven". The UC then called **Target Device 1** and notified ONOFRE-MENDEZ to meet at **Premise 1** because she/he does not feel comfortable meeting at a new location.

26. Investigators searched the UC and their vehicle for contraband and money, which yielded negative results. Surveillance units followed UC to the area of **Premise 1**. Surveillance units observed a male matching the physical description of ONOFRE-MENDEZ arrive in a white Ford F-150. ONOFRE-MENDEZ then exited the Ford F-150 and waved at the UC. ONOFRE-MENDEZ then began walking towards **Premises 1** and enter. Shortly after ONOFRE-MENDEZ exited **Premises 1** and walk towards the UC's vehicle and enter the passenger door. ONOFRE-MENDEZ then gave the UC a plastic bag containing white powdery substance suspected of Cocaine. At this time, the UC exited the vehicle and ONOFRE-MENDEZ was then placed under arrest.

27. ONOFRE-MENDEZ was then searched incident to arrest. ONOFRE-MENDEZ had **Target Device 1** and **Target Device 2** inside his pockets when arrested. On said date, investigators called **Target Device 1**. The blue Motorola that was seized from ONOFRE-MENDEZ rang in response to investigator's phone call, confirming that the blue Motorola was **Target Cell Phone 1**. **Target Device 1** and **Target Device 2** were then placed in airplane mode and then placed in an evidence bag.

### Additional Information about Target Devices

28. **Target Device 1** is a blue Motorola cell phone. I know that Motorola cellphones retain data including, but not limited to, Bluetooth data, Wi-Fi connectivity data, contacts, text messages, voicemails, and GPS location data. There is probable cause to believe, and I do believe, that location information stored on the **Target Device 1** may reveal the location of co-conspirators, stash house locations, and a pattern of life of participants in the drug trafficking activity being investigated here.

29. **Target Device 2** is a black Samsung smartphone. I know that Samsung cellphones retain data including, but not limited to, Bluetooth data, Wi-Fi connectivity data,

contacts, text messages, voicemails, and GPS location data. There is probable cause to believe, and I do believe, that location information stored on the **Target Device 2** may reveal the location of co-conspirators, stash house locations, and a pattern of life of participants in the drug trafficking activity being investigated here.

30. The Devices are currently in storage at the New Haven Drug Enforcement Administration District Office (NHDO-DEA). In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the New Haven Drug Enforcement Administration District Office.

31. Based on my training and experience and discussions with other investigators, it is known that persons who traffic and transport illegal narcotics frequently use cell phones to maintain contact with co-conspirators during travel and also use cell phones to contact persons where the drugs are destined. This frequently occurs due to the transient nature of these trafficking operations and because members of these conspiracies frequently travel and require coordination of their movements in order to pick up and drop off drugs at designated times and places.

32. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, notebook and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

33. From my training and experience, I know that narcotics traffickers often use wireless telephones, and often speak to one another using coded, cryptic or slang words and

phrases, in the belief that by doing so they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs, guns and/or other assets. I also know that such individuals often frequently "drop" or "change" their cellular telephones, i.e. terminate usage of one cellular telephone and begin usage of a new cellular telephone, in an attempt to thwart the efforts of law enforcement, and often possess and use multiple cellular telephones interchangeably for the same reason. Furthermore, I know that drug traffickers and the couriers and transporters that work for sources of supply often compartmentalize operations by using different phones to communicate with different re-distributors so that if one part of the distribution operation is compromised by law enforcement, other aspects of the operation remain intact. The use of multiple cell phones at the same time is one way to achieve such compartmentalization. I and other law enforcement officers that I have work within drug investigations have had the opportunity to obtain search warrants for cell phones in the past. The execution of these search warrants has resulted in the recovery of, among things, text messages, photographs, WhatsApp messages, Facebook messages, and phone contacts that have constituted evidence of drug trafficking.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

35.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

36. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

37. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

38. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

39. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

40. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

43. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the DEA intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

44. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **the Devices** described in Attachments A-1 and A-2 to seek the items described in Attachments B-1 and B-2.

## REQUEST FOR SEALING

45. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

JOEL PEREZ (Affiliate)
Digitally signed by JOEL PEREZ (Affiliate)
Date: 2024.10.18 12:46:53 -04'00'

JOEL PEREZ
TASK FORCE OFFICE, DEA

Subscribed and sworn to me over the telephone
on this, the  18  day of October in New Haven, Connecticut.

Maria E. Garcia
Digitally signed by Maria E. Garcia
Date: 2024.10.18 14:30:22 -04'00'

HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

A blue Motorola Cellphone assigned to phone number 203-509-8136, ("Target Cell Phone 1," or "Device 1"), which is located in the District of Connecticut and was seized during the arrest of Martin ONOFRE-MENDEZ on October 1, 2024.

## ATTACHMENT B-1

### Particular Things to be seized

1. All records and information evidencing drug trafficking offenses in violation of Title 21, United States Code, Sections 841(a)(1), 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances), and 843(b) (Use of a Communications Facility to Further Drug Trafficking) and firearm trafficking offenses in violation of 18 U.S.C. § 922(a)(1), and involve ONOFRE-MENDEZ since March 2024, to include the following, as they relate to the above-listed offenses:

    a. the telephone number, ESN number, serial number, and SIM card number of the telephone;

    b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the telephone;

    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, violations of 21 U.S.C. §§ 841(a)(1) and 846 and 843, or 18 U.S.C. 922(a)(1);

    d. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;

    e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;

    f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

    g. saved searches, locations, and route history in the memory of said telephone;

    h. internet browsing history, to include, internet searches in the memory of the telephone;

    i. images and videos in the memory of the telephone; and,

2. evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that the telephone contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT A-2**

A black Samsung Smart Phone with purple case ("Target Cell phone 2," or "Device 2"), which is located in the District of Connecticut and was seized during the arrest of Martin ONOFRE-MENDEZ on October 1, 2024.

3

## ATTACHMENT B-2

### Particular Things to be seized

1. All records and information evidencing drug trafficking offenses in violation of Title 21, United States Code, Sections 841(a)(1), 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances), and 843(b) (Use of a Communications Facility to Further Drug Trafficking) and firearm trafficking offenses in violation of 18 U.S.C. § 922(a)(1), and involve ONOFRE-MENDEZ since March 2024, to include the following, as they relate to the above-listed offenses:

    a. the telephone number, ESN number, serial number, and SIM card number of the telephone;
    b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the telephone;
    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, violations of 21 U.S.C. §§ 841(a)(1) and 846 and 843, or 18 U.S.C. 922(a)(1);
    d. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;
    e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;
    f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;
    g. saved searches, locations, and route history in the memory of said telephone;
    h. internet browsing history, to include, internet searches in the memory of the telephone;
    i. images and videos in the memory of the telephone; and,
2. evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting

said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that the telephone contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.